203 F.Supp. 612 (1962)
INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT, AGRICULTURAL IMPLEMENT WORKERS OF AMERICA and its Local Union, No. 463, (AFL-CIO), Plaintiffs,
v.
The WEATHERHEAD COMPANY, Defendant.
Civ. No. 35494.
United States District Court N. D. Ohio, E. D.
March 29, 1962.
Lowell Goerlich, Washington, D. C., for plaintiffs.
Frank C. Heath, Herbert J. Hansell and Stuart Merz, Cleveland, Jones, Day, Cockley & Reavis, Cleveland, Ohio, of counsel, for defendant.
KALBFLEISCH, District Judge.
This is an action to compel defendant to submit to arbitration a dispute allegedly arising out of grievances filed by the plaintiffs under the provisions of their collective bargaining agreement.
Defendant admits that the plaintiffs, the International Union, United Automobile, Aircraft, Agricultural Implement Workers of America and its Local Union, No. 463 (AFL-CIO), are unincorporated labor organizations within the meaning of the Labor Management Relations Act and represent employees in an industry affecting commerce, as defined in said Act.
Defendant admits that The Weatherhead Company is a corporation organized and existing by virtue of the laws of the State of Ohio and that said defendant is an employer employing employees in an industry affecting commerce, within the meaning of the Labor Management Relations Act.
Defendant admits that this action arises under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C.A. § 185, and that plaintiffs served on defendant a notice purporting to have been served under the U. S. Arbitration Act, 9 U.S.C.A. § 1 et seq.
Defendant admits that plaintiffs and the defendant entered into an agreement *613 in writing, dated August 15, 1958, which by its terms remained in force until August 15, 1960; that in said agreement said defendant recognized the plaintiffs as the sole collective bargaining agent for the purpose of settling any disputes which might arise concerning rates of pay, hours of work, working conditions and grievances between the employees and the management of the defendant for all production, maintenance and other employees described in paragraph 1 of the agreement.
Defendant admits that said agreement in paragraphs 17, 18, 19, 20, 21, 22, 23, 24, 25 and 26 establishes a five-step grievance procedure for the submission of grievances between the defendant and its employees arising under the agreement, and that paragraph 22 provides:
"Step V. In the event any dispute between the Company and the Union or any of the employees in the bargaining unit shall not have been satisfactorily settled by the above procedure, there shall be no lockout or strike of any kind but the matter shall be submitted for arbitration to a suitable disinterested person agreeable to both the Company and the Union as Impartial Arbitrator. If the parties are unable to agree to an Impartial Arbitrator within ten (10) days, either party shall request the Federal Mediation and Conciliation Service to name five (5) disinterested persons, the names of two of whom shall be stricken by each party and the remaining name shall be that of the Impartial Arbitrator. The Impartial Arbitrator shall interpret and apply this Agreement but he shall not have authority to alter or modify the terms of this Agreement. The decision of the Impartial Arbitrator shall be in writing and final and binding on both the Company and the Union. Each party shall bear the expenses of its own representatives at the arbitration hearing and the other expenses, including that for the Impartial Arbitrator, shall be divided equally and paid, one-half by the Company and one-half by the Union."
Defendant admits that three purported grievances, dated January 2, 1959, January 9, 1959, and January 12, 1959, were submitted and that said purported grievances were consolidated for the purpose of consideration and submission.
Defendant admits that the purported grievance dated January 2, 1959, alleged:
"RE: Layoff of Dept. 50 Housekeeping employees out of line of seniority, displacing them by junior employees, and payment of wages below the negotiated scale  in violation of contract articles # 1-2-8-56-64- and 94.
"Through an allegedly independent contractor the company has employed junior people to do the work of senior employees, laying off the senior employees. The new employees are being paid less than the negotiated scale for the work performed. We request retroactive adjustment for any time lost through the company making the aforementioned change." Plaintiff's Exhibit 2.
Defendant admits that the purported grievance dated January 9, 1959, alleged:
"RE: Employees displaced from jobs due to the company eliminating the Dept. 50 housekeeping unit by subcontracting and using junior employees in place of senior workers.
"We have been deprived of our jobs because we have been replaced by senior employees who had to bump us because the company has junior employees illegally performing their jobs. We request retroactive pay for all time lost and adjustment of any loss of earnings due to the company's action in this matter." Plaintiff's Exhibit 3.
Defendant admits that the purported grievance dated January 12, 1959, alleged:
"RE: Junior Employees performing work that we have been laid off from.

*614 "Due to the fact that the company is using junior employees on our jobs we have not been recalled to our former jobs and have less chance to be recalled than heretofore. We demand recall as senior employees with a retroactive adjustment that may be payable to us." Plaintiff's Exhibit 4.
The Court finds that the aforementioned grievances proceeded through the grievance procedure in accord with the provisions of the collective bargaining agreement, and that the plaintiffs requested that said grievances be submitted for arbitration in conformity with step 5, paragraph 22, of the agreement. Defendant admits that the defendant executed and delivered to plaintiffs, at the fourth step of the arbitration proceedings, the following:
"Fourth Step

"This complaint was reviewed in the 4th step of the grievance procedure on January 20, 1959. Representing the Union were Ed. Schultz, International Representative and the Union Committee; representing the Company were John Stair, R. Sommer and F. Rusch.
"It was agreed that grievances filed on January 9, 1959 and January 12, 1959 were both part of this grievance and disposition of them depended upon the final disposition of this complaint.
"After reviewing the union's claim, it is our decision that the contract was not violated when the company subcontracted the housekeeping work performed by the complaining employees. The housekeeping work was subcontracted for the purpose of reducing costs and securing a better job for the money spent. It was not done for the purpose of discriminating against any employees or to impair the effectiveness of the union.
"During the 1958 negotiations, the union sought to limit the company's right to subcontract and after lengthy negotiations, the contract was signed without any limitations in this regard. For these reasons the contract was not violated and the grievance is denied.
"The union argues that the standard of cleaning performed by the subcontractor employees is not as good as that of the company employees who formerly performed the work. The company's contract calls for an acceptable standard of cleaning and the company expects to hold the subcontractor to this obligation. If he does not perform up to the required standard, the company will take other steps to secure an acceptable job of cleaning."
The Court finds that plaintiffs' Exhibit 1 is a true, correct and authentic copy of the collective bargaining agreement between the parties in force and effect during the times complained of herein, that plaintiffs' Exhibits 2, 3 and 4 are grievances which, in form and substance, conform to the provisions of the collective bargaining agreement, and that such grievances were processed through the arbitration procedure in conformity with the provisions of the agreement.
The Court further finds that plaintiffs' request that said grievances be submitted for arbitration, in conformity with step 5, paragraph 22 of the agreement, was refused by the defendant.
The Court finds that this suit was brought under Section 301(a) of the Labor Management Relations Act and that the collective bargaining agreement between the parties contained "no strike" and "no lockout" provisions and set up a grievance procedure culminating in arbitration.
The Court finds that the collective bargaining agreement contains no express provision excluding any particular grievance from arbitration.
The Court finds that the defendant subcontracted out janitorial service, referred to as office housekeeping, by entering into a contract with an independent *615 contractor by the name of Empire Window Cleaning Company, of Cleveland, and, on or about January 1, 1959, pursuant to said contract, the subcontractor's employees began to perform the janitorial service. It was the subcontracting out of this maintenance housekeeping which formed the basis of the grievances and led to the institution of this litigation.
Upon the foregoing statement and findings of fact, the plaintiffs contend that the defendant does not have a unilateral right to subcontract out work on company premises in the absence of an express provision in the collective bargaining agreement excluding subcontracting from arbitration. Contrariwise, prior to and since the January 2, 1959, grievance, the defendant has persistently contended that it has the right to contract out work unless that right is limited or prohibited by the terms of the bargaining agreement. A long line of cases prior to the decision of the Supreme Court in United Steelworkers of America, AFL-CIO v. Warrior and Gulf Navigation Company, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409, have held that management had a right to contract out work unless that right was expressly limited by the terms of the bargaining agreement. The Supreme Court in Steelworkers v. Warrior did not reverse these cases, nor did it decide whether an employer does have a unilateral right to contract out work where there is no express controlling provision in the collective bargaining agreement; however, the Court did decide that, where a collective bargaining agreement contains a "no strike" "no lockout" provision and sets up a grievance procedure (as to any differences that arise as to the meaning and application of the provisions of the agreement) culminating in arbitration, unless there is an express provision in the agreement excluding contracting out work from arbitration, unless it may be determined with positive assurance that the arbitration clause is not susceptible of an interpretation that covers such a dispute, the grievance procedure should be followed. The Supreme Court, at page 585, 80 S.Ct. at page 1354, said:
"* * * we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, particularly where, as here, the exclusion clause is vague and the arbitration clause quite broad."
The question of whether contracting out work is a violation of the agreement is a question for the arbiter, not for the courts.
It is important to note that the collective bargaining agreement involved in Steelworkers v. Warrior provided that:
"* * * matters which are strictly a function of management shall not be subject to arbitration * * *."
By contrast, the contract in the instant litigation contained absolutely no provision limiting the scope of arbitration.
The Supreme Court in United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403, stated:
"* * * the function of the court is confined to ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract, and the court has no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."
Therefore, without more, in accord with the teachings of the Steelworkers v. Warrior decision, the Court would order the defendant to arbitrate. However, two additional issues are involved.
In its answer, defendant asserts that "from August 20, 1956 until August 15, 1958 there was in effect between the plaintiffs and defendant a written agreement dated August 20, 1956 which contained the same provisions as the agreement dated August 15, 1958 referred to in the complaint, except for certain variations *616 which are not material here, including a paragraph 22 identical to paragraph 22 of the agreement dated August 15, 1958 quoted in paragraph 5 of the complaint." The Court finds this allegation to be true and a correct statement of fact. (Defendant's Ex. A.)
The Court makes additional findings of fact as follows:
1. On January 14, 1958, a grievance was filed by the plaintiffs herein on behalf of one Anton Nauman, a maintenance employee in Department 50. (Defendant's Exhibit B.) This grievance was processed through the established grievance procedure contained in defendant's Exhibit A.
2. On March 10, 1958, arbitration of the Nauman grievance was requested (Defendant's Ex. B); and on May 13, 1958, the defendant having agreed to submit the Nauman grievance to arbitration, said Nauman grievance (Defendant's Ex. B) was submitted and heard by Harry J. Dworkin, arbitrator.
3. The collective bargaining agreement of 1956 to 1958 (Defendant's Ex. A) expired August 15, 1958, and in June of 1958 the parties began negotiations for a new contract to become effective August 15, 1958.
4. On June 16, 1958, in the course of these negotiations, plaintiffs submitted to defendant demands for the new contract (Defendant's Ex. C); and, on the same date, plaintiffs delivered to defendant a letter (Defendant's Ex. D) requesting that paragraph 55 in defendant's Exhibit A be changed to include the following:
"1. The Local Union Bargaining Committee shall be informed in writing of management's desires to contract work to an outside vendor.
"2. Management shall be obligated to present proof to the Bargaining Committee that they do not have the necessary facilities or manpower to perform the work.
"3. The Company shall not contract work to the outside vendors until mutual agreement has been reached by the parties.
"4. Any Weatherhead Company worker who is or will be out of work because of the Company contracting work to an outside vendor shall be compensated by an adequate severance pay arrangement without loss of seniority or other benefits."
Following this request, the parties met in numerous negotiating sessions to decide on the terms of the new agreement.
5. On July 31, 1958, while the parties still were negotiating terms of a new contract, Arbitrator Dworkin rendered a fourteen-page decision (Defendant's Ex. E) on the Nauman grievance (Defendant's Ex. B), and on July 31 or August 1, 1958, a copy of his decision was received by each of the parties herein. (TR 97.) The arbitrator decided that the defendant's engaging an outside contractor to paint plant machinery did not violate any of the contract rights of the grievant. In my conclusions I will make further reference to the arbitrator's decision.
6. Subsequent to the date of the Dworkin decision, numerous negotiations between the parties were concluded by the execution on September 10, 1958, of a new collective bargaining agreement for a two-year term expiring August 15, 1960. (Plaintiff's Ex. 1.) Plaintiffs' requests to limit defendant's right to contract out work, as hereinbefore set forth, were not incorporated in the new agreement.
7. In December, 1958, defendant entered into an agreement (Defendant's Exs. F-1, F-2 and F-3) with an outside contractor for the cleaning of the offices and certain other areas of defendant's plant, on a monthly basis, by employees of said contractor; and on January 2, 9 and 12, 1959, plaintiffs filed grievances (Plaintiffs' Exs. 2, 3 and 4) on behalf of "Department 50 housekeeping employees" protesting the contracting out of the cleaning work. On January 23, 1959, defendant delivered a letter (Defendant's Ex. G) to plaintiffs which, *617 in substance, declared that the contracting out of office cleaning work was not a proper subject for arbitration and that defendant refused to submit the question to arbitration. On July 22, 1959, plaintiffs brought this suit seeking an order compelling defendant to submit the grievances (Plaintiffs' Exs. 2, 3 and 4) to arbitration.
8. In June of 1960 the parties again engaged in negotiations for a contract which would become effective after the expiration of the contract then in force (Plaintiffs' Ex. 1), and on June 27, 1960, plaintiffs submitted to defendant contract demands (Defendant's Ex. H-1) and a letter requesting contract changes (Defendant's Ex. H-2). In defendant's Exhibit H-2 the plaintiffs request a "limit on subcontracting," using the identical language contained in defendant's Exhibit D. After extended negotiations, on September 26, 1960, the parties executed a new collective bargaining agreement for a two-year term expiring August 15, 1962 (Defendant's Ex. I) and the demand and requests contained in defendant's Exhibits H-1 and H-2 for limiting subcontracting were not incorporated in defendant's Exhibit I.
9. The collective bargaining agreement involved herein (Plaintiffs' Ex. 1) contained the following paragraph:
"Joint Interpretations of Agreement

"107. No agreement or interpretation as to the meaning, application, or enforcement of this contract shall be binding upon the Company or the Union unless stated in writing after the date of this contract and signed by the party to be bound."
Neither the plaintiffs nor defendant executed a statement in writing in compliance with the foregoing paragraph.
10. The management clause, paragraph 8 in plaintiffs' Exhibit 1, is as follows:
"Management

"8. The full management of the plant, the direction of the working forces and requiring the observance of reasonable rules are vested exclusively in the Company, provided that such prerogatives will not be used in violation of the clauses of this Agreement or to discriminate against any Union member."
11. As a result of the subcontracting out of the janitorial services, the basis of the grievances involved herein, some employees (unnamed) were laid off from work in the plant. (TR. 92-93.)
The first issue arising from these facts is: In a contract containing "no strike" and "no lockout" provisions and setting up a grievance procedure culminating in arbitration, does the absence of a provision expressly excluding "contracting out" from the arbitration process mean that any grievance on that subject is automatically subject to arbitration; if not, and a court order is sought to compel the recalcitrant party to arbitrate, does the court admit evidence and apply the rules of construction and interpretation as in ordinary contract law? My conclusion is that such a grievance is not automatically subject to arbitration and, further, that ordinary contract law is not followed. The judicial inquiry is limited to a search for an explicit provision which brings the grievance under the cover of an exclusion clause, and in such a trial "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail, * * * [and] the court should view with suspicion an attempt to persuade it to become entangled in the construction of the substantive provisions of a labor agreement, even through the back door of interpreting the arbitration clause, when the alternative is to utilize the services of an arbitrator." Steelworkers v. Warrior, supra, 363 U.S. 585, 80 S.Ct. 1354.
In Steelworkers v. Warrior, the Supreme Court reversed the District Court and the Court of Appeals and rejected their findings of fact and conclusions of law, which had been arrived at by applying the rules of evidence and construction of ordinary contract law, and turned a deaf ear to the views on that subject *618 as expressed in Justice Whitaker's dissenting opinion. (Pages 590, 591, 592, 80 S.Ct. 1347.)
The defendant, in its review of these facts, argues that "This evidence demonstrates that defendant has not agreed to submit to arbitration the question here presented." The identical nature of the facts here with the facts in Steelworkers v. Warrior is obvious. The Supreme Court, in Steelworkers v. Amer. Mfg. Co., 363 U.S. 564, 567, 80 S.Ct. 1343, disposed of this argument by saying that the lower court's consideration of such facts is a "preoccupation with ordinary contract law." The defendant misconstrues the teachings in Steelworkers v. Warrior and  in relying on Vulcan-Cincinnati, Inc. v. United Steelworkers of America, 6 Cir., 289 F.2d 103; Local No. 725, International Union of Operating Engineers v. Standard Oil Co. of Indiana, D.C., 186 F.Supp. 895; and Marec v. United States Steel Corp., D.C., 195 F.Supp. 137  the defendant fails to note the difference between the facts and the issues in those cases and those in the instant case. Vulcan-Cincinnati was a suit by an employer to recover damages as a result of a strike by the defendant Union. Local No. 725, Int. U. of Op. Eng. was a suit by the Union to compel arbitration of grievances, but Judge Register, in the next to the last paragraph on page 899 of 186 F.Supp., said: "It is obvious that there are two substantial, and this Court believes, vital, differences in the contract here before the Court and that involved in Warrior." Judge Register proceeded to apply the procedures of the ordinary contract law to the exclusion clause in the contract there in dispute; whereas, here there is no exclusion clause. Marec was a suit by a number of plaintiffs, in their individual capacities, seeking damages for breach of a collective bargaining agreement, claiming unlawful discharge from employment.
The collective bargaining agreement involved herein (Plaintiffs' Ex. 1) does not contain a provision excluding "contracting out" from the grievance procedure, nor did the parties execute a written collateral agreement making clear that "contracting out" was not a matter for arbitration. In the absence of any express provision excluding "contracting out" from arbitration, only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail; and, inasmuch as the evidence in Steelworkers v. Warrior lacked sufficient force to establish such a purpose, certainly the evidence here is insufficient.
The second issue presented arises from the arbitration of the Nauman grievance (Defendant's Ex. B) and the arbitrator's decision therein (Defendant's Ex. E). It is to be noted that the Nauman grievance was filed and processed in accord with the provisions of a contract (Defendant's Ex. A) which was in effect prior to the contract involved herein (Plaintiffs' Ex. 1); however, the provisions in defendant's Exhibit A were the same as those in plaintiffs' Exhibit 1 except for certain variations which are not material.
The arbitrator, in his decision (Defendant's Ex. E), reported the Nauman grievance and the answer of the Company to said grievance to be as follows:
Grievance
"RE: Outside Contractors performing my work.
"The company has assigned an outside contractor to paint 5 machines, in spite of the fact that I am fully capable of painting these machines and am available for any work the company recalls me for. I demand all payment due to me while these outside painters worked on my job. Job started January 14, 1958."
Company's Answer
"The matter of subcontracting has been before us several times during the past few years, including negotiations. The company has always been unwilling to limit itself to this regard. The present contract does not restrict the right of the company to subcontract. Plant engineering *619 had what it feels are sound reasons for subcontracting this painting work, which were reviewed with the committee. The fact the committee does not agree does not make the subcontracting a contract violation. There was no violation of the contract, therefore, the grievance is denied."
The issue, in the language of the arbitrator (Defendant's Ex. E), was as follows:
"Did the company, by engaging an outside industrial contractor to paint five machines in the plant, violate any of the contract rights of the grievant?"
The arbitrator, in his decision, beginning with the last paragraph on page 13 of defendant's Exhibit E, stated:
"The award which follows is necessarily confined to the issue or grievance processed through the grievance procedure and presented to the arbitrator for decision and award. The arbitrator is unable to concur with the company that the contract contains no limitations whatsoever as to the right to subcontract, nor is this broad general problem before him."
The arbitrator's award (Defendant's Ex. E) was as follows:
"The company did not violate any of the contract rights of the grievant in engaging an outside contractor to paint plant machinery, there being no evidence that the company acted in bad faith, and the evidence further establishing that the action of the company was consistent with established past practice in similar instances."
Notwithstanding the defendant's adamant refusal to arbitrate the grievances herein involved, it did arbitrate, under a prior identical contract, a grievance alleged to be similar. The mere fact that defendant consented to arbitrate the Nauman grievance in 1958 did not commit it to arbitrate later similar grievances.
The defendant strongly contends that "the final and binding effect of an arbitrator's decision on a question of contract interpretation precludes rearbitration of that question." I have no hesitancy in saying that in view of the language in paragraph 22 of the contract the decision of the arbitrator was final and binding on the parties, but I disagree with the defendant as to the reach and scope of the arbitrator's decision.
Although the defendant dwells at length upon the applicability of the doctrines of res judicata and collateral estoppel, I am of the firm conviction that these doctrines do not apply in this case. These doctrines extend only to the facts in issue as they existed at the time the arbitrator's decision was rendered and there can be no doubt that the Nauman grievance is settled finally and cannot be relitigated.
The issue before this Court is: Are the plaintiffs making a claim which on its face is governed by the contract? Arbitrator Dworkin was not concerned with the issue of arbitrability of the Nauman grievance. On the contrary, the arbitrator specifically stated: "The arbitrator is unable to concur with the company that the contract contains no limitations whatsoever as to the right to subcontract, nor is this broad general problem before him." (Emphasis added.) Therefore, though the doctrines of res judicata and collateral estoppel may apply to an arbitrator's decision they are not applicable here.
It is the judgment of this Court that plaintiffs be decreed specific performance of the arbitration provisions of the agreement involved herein and an order shall issue directing arbitration to proceed in the manner provided in said agreement.
This memorandum is adopted as findings of fact and conclusions of law as required under Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.