NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0096n.06
Filed: February 5, 2008

No. 07-5041

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ROLL COATER, INC., | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF KENTUCKY |
| v. | ) | |
| | ) | |
| CHAUFFEURS, TEAMSTERS AND | ) | |
| HELPERS LOCAL UNION NO. 215, | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: MOORE, GRIFFIN, Circuit Judges, and GRAHAM, District Judge*

**GRAHAM, District Judge.** This case presents the question of whether an arbitrator was arguably construing the collective bargaining agreement between Roll Coater, Inc. and Chauffeurs, Teamsters and Helpers Local Union No. 215 when he ordered the reinstatement of employee Stacy Westerfield. Roll Coater discharged Westerfield for cause under the CBA for allegedly drinking alcohol on the job and for taking prescription medication, which caused dizziness, at work. The arbitrator overturned the discharge upon finding insufficient evidence that Westerfield had consumed alcohol on the job and finding that her one-time use of prescription medication without knowledge of its side effects was not just cause for discharge.

Roll Coater filed an action in district court seeking to have the arbitration award vacated.

---

* The Hon. James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

The district court upheld the award. On appeal, Roll Coater challenges the arbitrator's decision only as to Westerfield's prescription medication use. Because the arbitrator arguably construed the CBA in finding that Westerfield's use of prescription medication was not just cause for discharge, we affirm the judgment of the district court.

## I. BACKGROUND

Roll Coater is in the business of applying coatings to large metal coils. It operates a plant in Hawesville, Kentucky where Westerfield, a union member, was employed as a shipping material handler. Westerfield was primarily responsible for moving large coils of steel with a forklift. Westerfield left the plant at 8:00 a.m. on December 1, 2004 after working an eight-hour shift. At 8:35 a.m., Westerfield was involved in an automobile accident in Owensboro, Kentucky. The officer reporting at the scene noticed alcohol on Westerfield's breath. The officer conducted four field tests, two of which Westerfield failed. Her blood alcohol concentration was later measured at 0.183, above the legal limit of 0.08.

Given the short time span between the end of Westerfield's shift and the accident, Roll Coater was concerned that she may have consumed alcohol on the job and decided to investigate the matter. Several employees reported that Westerfield appeared to act "strange" during her shift and had told co-workers that she was taking medication which made her "dizzy." Joint Appendix ("J.A.") at 52 (Arbitration Decision at 2). Westerfield had not informed her supervisors that she was taking any medications at work.

The company interviewed Westerfield on December 6, 2004 with Union representatives present. She stated that she was taking Ativan and Zanax, both of which had been prescribed for an anxiety disorder. She also stated that she had consumed two-and-a-half bottles of beer after she left

2

work on December 1. During further questioning on December 15, Westerfield reiterated that she had not consumed alcohol until after she left work on December 1.

On December 15, 2004, Roll Coater terminated Westerfield. It gave two reasons. First, the company concluded that Westerfield had possessed, consumed, or been under the influence of alcohol on the job. In Roll Coater's view, Westerfield must have consumed alcohol before she left work in order to have registered a blood alcohol level of 0.183 within 35 minutes of leaving work. Second, the company concluded that because the medication made her dizzy, Westerfield had created an "unsafe condition" in violation of Rule 32 of the Rules of Conduct. Under Rule 32, an employee may not "[f]ail to comply with Company safety rules and procedures, policies, and practices; fail to use safety devices or personal protective equipment as required; or engage in any conduct which, in the Company's opinion, creates an unsafe condition." J.A. at 49 (Rules of Conduct at 4). Failure to comply with the Rules of Conduct "may subject the associate to disciplinary action up to and including discharge." *Id*. at 46 (Rules of Conduct at 1).

The Union filed a grievance challenging Westerfield's discharge. The grievance procedure failed to resolve the matter, and the parties went to arbitration under Article 14 of the CBA. The parties stipulated that the issue presented to the arbitrator was whether Westerfield's discharge was for just cause and, if not, what should be the remedy.

After two hearings and the filing of letter briefs, the arbitrator sustained the Union's grievance and ordered that Westerfield be reinstated with back pay. The arbitrator found that Westerfield's blood alcohol level was tested 90 minutes, not 35 minutes, after leaving work on the morning of December 1, 2004. The arbitrator further found that the weight of the evidence supported Westerfield's account that she consumed alcohol only after leaving work. As to

3

Westerfield's prescription medication use, the arbitrator credited her testimony that she had never before taken the medications while at work, except she took one Ativan during the latter part of her shift on December 1. J.A. at 61-62, 66 (Arbitration Decision at 11-12, 16). The arbitrator further credited Westerfield's testimony that she did not know that taking one Ativan would make her dizzy. The arbitrator acknowledged the company's reliance on Rule 32, but then noted that Roll Coater's plant superintendent, Rick Dzurney, had testified that an employee is not required to inform management of prescription medication and that there is no company policy on the matter. *Id.* at 66 (Arbitration Decision at 16). The arbitrator found that Westerfield's one-time use of Ativan, with side effects she did not anticipate, was not just cause for her discharge. The arbitrator cautioned Westerfield that she was now on notice of the drug's side effects and should not take it at work again.

Roll Coater filed an action in district court under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C. § 185, asking the court to vacate the arbitration award. The parties filed cross-motions for summary judgment, and the district court granted summary judgment to the Union and upheld the arbitration award in full.

## II. ANALYSIS

### A.      Standard of Review

We review de novo a district court's order granting summary judgment in an arbitrated labor dispute. *UAW v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002). Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d

4

538 (1986); Fed. R. Civ. P. 56(c).

### B. Whether the Arbitrator Arguably Construed the Contract

The district court analyzed this case under the four-part test announced in *Cement Divisions, National Gypsum Co. v. United Steelworkers of America, AFL-CIO-CLC, Local 135*, 793 F.2d 759 (6th Cir. 1986). That test has since been overruled, and the court now must confine its review of the arbitration award to the following questions of "procedural aberration":

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Michigan Family Resources, Inc. v. Service Employers Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) (en banc) (citing *United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 38-40, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987); *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509-10, 121 S.Ct. 1724, 149 L.Ed.2d 740 (2001)).

Only the third inquiry – whether the arbitrator arguably construed the contract – is at issue in this case. "[I]n most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if there is doubt we will presume that the arbitrator was doing just that." *Michigan Family Resources*, 475 F.3d at 753. Here, the arbitrator noted that just cause was required for Westerfield's discharge. Under Article 13, Section 1 of the CBA, "discipline and discharge shall be for just cause only." J.A. at 20 (CBA at 17). The CBA does not define "just cause," so the arbitrator discussed traditional understandings of that term in the context of workplace discipline and concluded that it generally requires for the discipline imposed to be "a reasonable

5

penalty under the circumstances of the case." *Id*. at 56 (Arbitration Decision at 6).

The arbitrator then addressed Rule 32 of the Rules of Conduct, which Roll Coater relied on in discharging Westerfield. Roll Coater argued that Westerfield's use of Ativan was just cause for discharge because it made her dizzy and created an unsafe condition. The arbitrator found that no provision of the CBA or Rules of Conduct requires an employee to report her use of prescription medication to supervisors or prohibits an employee from using medication as prescribed. Indeed, the lone provision of the CBA touching on prescription medication use, Article 11, Section 2, states only that an employee cannot use medication in a manner not prescribed or directed. J.A. at 20 (CBA at 16). As the arbitrator observed, "there is no policy at Roll Coater on this subject" of an employee using medication as prescribed at work. *Id*. at 66 (Arbitration Decision at 16).

The arbitrator's decision "has all the hallmarks of interpretation." *Michigan Family Resources*, 475 F.3d at 754. The decision cites and analyzes the relevant provisions of the CBA and Rules of Conduct. In the absence of a definition of "just cause" in the CBA, the arbitrator engaged in a good faith interpretation and application of that term. And in the absence of any provision in the CBA or Rules of Conduct barring prescription medication use at work or requiring prior approval of such use, the arbitrator found that Rule 32 could not be applied as broadly and severely as Roll Coater advocated. The arbitrator concluded that discharge was not the appropriate degree of discipline under the CBA because Westerfield had never before taken Ativan at work and did not know of its side effects. The CBA, in Article 13, Section 2, calls for "a progressive disciplinary procedure" and requires Roll Coater to "not discharge or otherwise take any disciplin[ary] action against any associate without first giving notice . . . of the conduct expected and of the potential consequence for violating that expectation." J.A. at 20 (CBA at 17). The arbitrator gave effect to

this provision of the CBA by reducing Westerfield's punishment from discharge to a notice. *Id*. at 66 (Arbitration Decision at 16) ("She is now on notice regarding the effect this drug may have and there is no reason to believe that in the future she will not act accordingly."). *See Truck Drivers Local No. 164 v. Allied Waste Sys., Inc*., __ F.3d __, 2008 WL 50090, at *6-7 (6th Cir. Jan. 4, 2008) (holding that an arbitrator was arguably construing the collective bargaining agreement when he reduced an employee's punishment from discharge to a written warning upon finding that the agreement required him to consider the degree of discipline imposed).

Roll Coater nonetheless contends that the arbitrator did not arguably construe the CBA because certain provisions of the CBA and Rules of Conduct created an irrebuttable presumption of just cause for discharge and left nothing to interpret. Under Article 13, Section 4 of the CBA, Roll Coater has the right to make and enforce rules regarding employee conduct and safety. J.A. at 21 (CBA at 18). When Roll Coater makes a rule and the Union does not grieve its reasonableness within ten days, the rule is given an irrebuttable presumption that it is "reasonable and constitute[s] just cause for discipline up to and including discharge." *Id*. Roll Coater argues that because the Union never challenged Rule 32, an irrebuttable presumption exists that a Rule 32 violation is just cause for discharge.

Roll Coater's argument misses the mark. A Rule 32 violation is just cause for "disciplinary action up to and including discharge." J.A. at 46 (Rules of Conduct at 1). Under the arbitrator's analysis of the documents, Westerfield's conduct warranted disciplinary action short of discharge. In the end, Roll Coater simply disagrees with the arbitrator's interpretation of the CBA and Rules of Conduct. This is not enough to reverse the arbitrator's decision. That Roll Coater, or a court, thinks the arbitrator made "serious," "improvident" or "silly" errors in resolving the dispute does not

7

matter. *Michigan Family Resources*, 475 F.3d at 753. It was "the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

## III. CONCLUSION

A review of the arbitrator's decision shows that the arbitrator was engaged in interpretation and arguably construed the relevant provisions of the CBA and Rules of Conduct. Therefore, we AFFIRM the judgment of the district court.