<u>NOT RECOMMENDED FOR FULL-TEXT PUBLICATION</u>
File Name: 19a0466n.06

No. 19-3089

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 04, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHNS MANVILLE, | ) | |
| | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| INTERNATIONAL BROTHERHOOD OF | ) | OHIO |
| TEAMSTERS, LOCAL 20, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE: GILMAN, SUTTON, and WHITE, Circuit Judges.

**HELENE N. WHITE, Circuit Judge.** International Brotherhood of Teamsters Local Union No. 20 ("Local 20") appeals the district court's judgment vacating an arbitration award in its favor. Because the arbitrator acted within the scope of his authority in resolving the dispute and arguably construed and applied the relevant collective bargaining agreement, we reverse the district court and remand with instructions to enter an order enforcing the arbitration award.

I.

Johns Manville operates a manufacturing plant in Waterville, Ohio, where Terrance Hudson worked as a Furnace Tender. Hudson is a member of Local 20, which represents a bargaining unit of employees at the Waterville plant. After Johns Manville fired Hudson for working while intoxicated, Local 20 filed a wrongful-discharge grievance under the parties' collective bargaining agreement ("CBA").

The CBA provides that if a dispute arises between Local 20 and Johns Manville about "the interpretation or alleged violation" of the CBA (R. 9-2, PID 294), either party may request arbitration. Article 15 of the CBA states that the "[j]urisdiction of the arbitrator is limited to" "[r]eversing the decision of the Company in matters involving the fairness of discipline, discharge or change of status of an employee, only if it is found that the Company has acted *arbitrarily and without just cause*, or in violation of this Agreement." (*Id.* at PID 297 (emphasis added).) The CBA also includes a provision listing the rights of management; Article 27 of the agreement includes the right of management to "discipline or discharge employees for just cause." (*Id.* at PID 308.)

At the start of the arbitration hearing, the parties had not yet stipulated to the issue for arbitration. When the arbitrator asked what issue he should consider, Johns Manville's counsel initially proposed language based on Article 15. She suggested that the issue be defined as: "According to the contract, in terminating Mr. Hudson, did the Company act arbitrarily and without just cause or in violation of the collective bargaining agreement[?]"[1] (R. 9-1, PID 153.) Local 20's counsel disagreed. He thought that the issue should align with Article 27 and suggested that the issue be defined as: "Whether the grievant was discharged for just cause." (*Id.*)

The arbitrator then asked if the parties were "okay" with formulating the issue as: "Was the discharge of the grievant for just cause, if not, what should the remedy be[?]" (*Id.*) Both parties agreed to that formulation of the issue. Next, the arbitrator asked whether the matter was "properly before the arbitrator." (*Id.*) Again, both parties agreed it was. Beyond that, the parties and arbitrator did not discuss the extent of the arbitrator's authority over the matter.

---

[1] The company's counsel explained that this phrasing is found "in Article 11, Section 85D, page 42." (R. 9-1, PID 153.) This language is actually found in section 85(d) of Article 15, which is on page 42.

In its post-hearing brief, Johns Manville did argue that its conduct was not arbitrary. Yet Johns Manville did not emphasize that the arbitrator needed to use the inquiry set out in Article 15, which required a finding of both no just cause and arbitrariness to set the company's discipline aside, as opposed to the language set out in Article 27, which required only a finding of no just cause.

In his opinion resolving the dispute, the arbitrator relied on Article 27, explaining that under that provision, Johns Manville has "the sole and exclusive right . . . to discipline or discharge employees for just cause." (R. 9-2, PID 308.) Applying the "just cause principle," the arbitrator considered not only Hudson's infraction but also his "length of service with the Employer and [his] discipline and work record." (R. 4-3, PID 135.) The arbitrator explained that although Hudson violated Critical Plant Rule C10, which prohibits "being under the influence of intoxicants . . . in the plant or on Company property" (R. 9-2, PID 426), a first violation of which "would normally result in termination of employment" (*id.* at PID 419), the violation in this case did not amount to just cause for termination because Hudson was a nineteen-year employee, "a good worker," and had no active disciplinary actions in his work record (R. 4-3, PID 135).

Reasoning that the company had just cause to suspend Hudson, the arbitrator modified Hudson's discharge to a sixty-day disciplinary suspension, ordered that Hudson be reinstated, and required that Hudson submit to drug and alcohol testing and adhere to any substance-abuse treatment deemed appropriate by the company's Employee Assistance Program.

The arbitrator did not make an explicit finding whether the firing was arbitrary.

Johns Manville brought suit in district court to vacate the arbitration award, and the parties filed cross-motions for summary judgment. The district court granted Johns Manville's motion. Although the district court found that the arbitrator's reinstatement award did not alter the terms

of the CBA by concluding that Johns Manville lacked just cause to fire Hudson, the district court vacated the arbitration award on the grounds that the arbitrator exceeded his authority by modifying Hudson's discharge without making an explicit finding that the company acted arbitrarily.

Local 20 timely appealed.

## II.

We review de novo a district court's grant of summary judgment in a labor-arbitration dispute. *Totes Isotoner Corp. v. Int'l Chem. Workers Union Council/UFCW Local 664C*, 532 F.3d 405, 410 (6th Cir. 2008) (citation omitted). "Where the court reviews *de novo* the district court's decision to enforce or vacate an arbitrator's award, the focus is on the arbitrator's analysis, not that of the district court." *Bhd. of Locomotive Eng'rs & Trainmen v. United Transp. Union*, 700 F.3d 891, 898 (6th Cir. 2012) (internal quotation marks and citation omitted). This court plays a "very limited" role when the losing party seeks judicial review of an arbitration decision pursuant to a labor-arbitration agreement. *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). Because only the most egregious arbitration awards should be vacated on appeal, "our review of an arbitration award is 'one of the narrowest standards of review in all of American jurisprudence.'" *Tenn. Valley Auth. v. Tenn. Valley Trades & Labor Council*, 184 F.3d 510, 514–15 (6th Cir. 1999) (quoting *Lattimer-Stevens Co. v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)).

When reviewing arbitration awards, we ask, as relevant here, (1) whether the arbitrator acted "outside his authority" by resolving a dispute not committed to arbitration by agreement; and (2) in resolving legal or factual disputes, whether the arbitrator was "arguably construing or applying the contract." *Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d

746, 753 (6th Cir. 2007) (en banc).[2] "Once it [is] established that the arbitrator was construing or applying the contract (and acting within the scope of his authority)," we must defer to the arbitrator's decision, even if we think that the arbitrator made errors in resolving the merits of the dispute—no matter how "serious, improvident, or even silly" those errors are. *Id.* (internal quotation marks and citation omitted).

## III.

Johns Manville argues that the arbitrator acted "outside his authority" in resolving this dispute by modifying the company's discipline of Hudson without making an explicit finding that the company acted arbitrarily in firing him. In *Michigan Family*, we explained that an arbitrator "exceeds [his] authority only when the collective bargaining agreement does not commit the dispute to arbitration." *Id.* at 756. "Perhaps anticipating that clever parties would attempt to recast a disagreement with an arbitrator's decision as a claim that he acted outside of his authority, *Michigan Family* 'severely curtailed the 'scope of authority' concept.'" *Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 901 (quoting *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 217 (6th Cir. 2008)). *Michigan Family* asks a broad, high-level question about the arbitrator's scope of authority: is this the type of dispute committed to arbitration?

Here, the parties committed the dispute—whether Johns Manville acted without just cause—to arbitration. The parties expressly agreed at the outset to define the issue before the arbitrator as whether Johns Manville had just cause to fire Hudson, using language from Article 27. Johns Manville briefly argues, with no supporting precedent, that the parties' agreed-upon definition of the issue as solely a "just cause" determination does not excuse the arbitrator from deciding whether the company acted arbitrarily in firing Hudson. We disagree. Johns Manville

---

[2] *Michigan Family* also instructs the court to consider whether the arbitrator committed fraud or otherwise acted dishonestly, which is not an issue in this case. 475 F.3d at 753.

agreed to arbitrate the precise dispute decided by the arbitrator by defining the issue the arbitrator was to decide using language from Article 27, which focuses the inquiry on whether there was just cause. Johns Manville cannot now claim that the arbitrator exceeded his authority by resolving the very question the parties put to him simply because it disagrees with the outcome of the arbitration. Contrary to the suggestion made by Johns Manville's counsel at oral argument, nothing in the rest of the colloquy with the arbitrator changed the nature of the initial stipulation. Further, in their post-hearing briefs, neither party altered the stipulated question, and Johns Manville did not emphasize that the arbitrator needed to use the inquiry set out in Article 15 as opposed to Article 27. Therefore, the arbitrator did not exceed his authority by failing to make a separate, explicit finding whether Johns Manville fired Hudson arbitrarily.

IV.

A.

Having concluded that the arbitrator acted within the scope of his authority, the question becomes whether the arbitrator "arguably construed and applied" the CBA when modifying Hudson's discipline without making a finding on arbitrariness. *Mich. Family Res.*, 475 F.3d at 753. Whether the arbitrator "arguably construed or applied" the contract is a "process-driven question" that asks, in short, if the arbitrator made a plausible effort to interpret the contract. *Id.* Hallmarks of interpretation include referring to, quoting from, and analyzing the relevant portions of the agreement. *Id.* at 755. "[S]o far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 599 (1960). "Put otherwise, if the arbitrator's construction is plausible, it must not be disturbed." *Bhd. of Locomotive Eng'rs & Trainmen*, 700 F.3d at 902.

So long as the arbitration award "draw[s] its essence" from the contract, courts should sustain the award, even if it has "serious, improvident, or . . . silly errors." *Mich. Family Res.*, 475 F.3d at 751, 753. In rare cases, however, the arbitration award may be so far afield from the plain language of the contract that it "fails to draw its essence" from the terms of the CBA, making it implausible to conclude that the arbitrator engaged in interpreting the contract. *Id.* at 751 (quoting *Cement Divs., Nat'l Gypsum Co. v. United Steelworkers, Local 135*, 793 F.2d 759, 766 (6th Cir. 1986)). In such cases, the arbitrator is "so untethered to" the contract at issue, *id.* at 753 (quoting *Garvey*, 532 U.S. at 512 (Stevens, J., dissenting)), that he enters "the forbidden world of effectively dispens[ing] his own brand of industrial justice," *id.* at 752 (alteration in original) (internal quotation marks and citation omitted). If there is doubt whether the arbitrator was engaged in interpretation, those doubts should be resolved in favor of upholding the award. *Id.*

This is not one of the egregious arbitration awards that must be vacated. As in *Michigan Family*, the arbitrator's eighteen-page opinion "has all the hallmarks of interpretation." *Id.* at 754. The arbitrator explicitly analyzed and "quote[d] from . . . the pertinent provisions of the agreement." *Id.* Specifically, the arbitrator quoted Article 27—which the parties stipulated to as the issue for arbitration—as well as Addendum No. 1 ("Disciplinary Guidelines"), Critical Plant Rule C10, and the Uniform Substance-Free Workplace Procedures. The arbitrator explained that the parties agreed, in Article 27, that the employer had the unilateral right to discipline or discharge employees, but only for just cause. Under the facts of this case, the arbitrator determined that Hudson was terminated without just cause. In so finding, the arbitrator was not bent on dispensing "his own brand of industrial justice," but rather focused on construing and applying the contract. *See id.* Although the arbitrator did not explicitly conclude that the termination decision was arbitrary, he clearly grappled with the facts of the case and the provisions of the CBA that the

7

parties agreed were relevant. "[A]t no point" in his analysis did the arbitrator indicate "that he was doing anything other than trying to reach a good-faith interpretation of the contract." *Id.*

Because the arbitrator's analysis has all the hallmarks of interpretation and because the absence of an explicit finding whether the company acted arbitrarily is at most an error to be tolerated given the parties' framing of the question, we conclude that the arbitrator "arguably construed and applied" the CBA.

B.

Johns Manville also argues that the arbitrator's award did not arguably construe or apply the CBA because the arbitrator ignored the plain language in the CBA that gives the company the exclusive right to determine when violations of its substance abuse policy warrant termination. We disagree. As an initial matter, the company explicitly agreed that the arbitrator would determine what the remedy should be if he found that Johns Manville fired Hudson without just cause.

Further, the arbitrator's award does not strip the company of an exclusive right unquestionably granted to it in the CBA. *See Bixby Med. Ctr., Inc. v. Mich. Nurses Ass'n*, 142 F. App'x 843, 849 (6th Cir. 2005) (collecting cases). Johns Manville argues that the following language in Addendum 1 to the CBA means that the arbitrator could not modify the company's disciplinary decision:

> Johns Manville reserves the right to determine the severity of those infractions, which warrant progressive discipline, and those which are subject to discharge or suspension for the first offense.

(R. 9-2, PID 320.) This provision does reserve to Johns Manville the right to impose discipline as it sees fit, but, as the district court observed, the CBA also provides the arbitrator with authority to "revers[e] the decision of the Company in matters involving the fairness of discipline, discharge or change of status of an employee." (*Id.* at PID 297.) As Local 20 argues, nothing in the

Addendum 1 provision expressly prohibits the arbitrator from modifying the disciplinary action taken against an employee. And, again, the parties presented the issue to the arbitrator as a question of just cause. Therefore, the award does not contradict the plain language of this provision.

V.

For the foregoing reasons, we reverse the district court's decision granting summary judgment to Johns Manville and denying summary judgment to Local 20, and remand with instructions to enter an order enforcing the arbitration award.