NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0372n.06
Filed: June 25, 2008

No. 07-2228

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| KROGER COMPANY, | ) | |
| | ) | |
| **Plaintiff/Counter-** | ) | **ON APPEAL** FROM THE |
| **Defendant-Appellant,** | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| UNITED FOOD AND | ) | |
| COMMERCIAL WORKERS | ) | |
| UNION LOCAL 876, | ) | |
| | ) | |
| **Defendant/Counter-** | ) | |
| **Plaintiff-Appellee.** | ) | |
| _____ | ) | |

## OPINION

**Before: GIBBONS and SUTTON, Circuit Judges; ACKERMAN, District Judge.**[*]

**HAROLD A. ACKERMAN, District Judge.** This labor case arises from a grievance filed by the United Food and Commercial Workers Union Local 876 (the "Union") against Kroger Company ("Kroger"). The Union and Kroger – specifically, Kroger's "Meat Division" – have entered into successive Collective Bargaining Agreements ("CBAs") regarding the terms and conditions of employment for Kroger meat department employees. The Union's grievance concerned Kroger's implementation of a change in its uniforms policy for its Union meat

---

[*] The Honorable Harold A. Ackerman, Senior United States District Judge for the District of New Jersey, sitting by designation.

1

department employees in its Michigan stores.  Pursuant to the relevant CBA's binding arbitration provision, the Union's grievance was heard before an arbitrator, who subsequently issued an Opinion and Award.  Kroger brought this suit to partially vacate the Award, and the Union filed a counterclaim to enforce the entire Award.  We agree with the District Court that the arbitrator did not act outside his authority and that he "arguably interpreted and construed" the CBA.  Therefore, we will affirm.

## I.

Prior to the new uniforms policy, Kroger provided its meat department employees with white uniforms that were laundered and maintained at Kroger's expense by an outside laundry service.  Under the new policy, announced by Kroger in a July 17, 2003 letter to the Union's "Meat Director," meat employees would receive burgundy drip dry coats from Kroger, but the employees would have to launder and maintain the uniforms themselves, at their own expense and on their own, uncompensated time.  (JA at 683.)

After a meeting between Kroger and Union officials, the Union filed a grievance under the CBA.  In its October 17, 2003 grievance letter, the Union President asserted that by issuing and implementing the new policy, Kroger *"is violating sections 9.1, 10.3, 10.4, 10.10, Articles 13, 14, 19 and 21, and any other relevant sections of its Agreement(s) with UFCW Local 876 covering Meat Departments."*  (JA at 682.)  Article 10.10 of the CBA applies most directly to the parties' meat uniform dispute.  This provision reads:

> **Uniforms and Tools** – All uniforms and tools deemed necessary shall be furnished by the Company and shall be laundered and maintained at the Company's expense.  Where drip dry uniforms are

2

provided, the employee shall be responsible to maintain and launder.

(JA at 23.)[1]  The Union cited several other CBA provisions in its grievance, and the arbitrator

quoted and relied on several of these provisions in his Opinion.  Most important among these

other provisions is Article 10.3, entitled "Pay for all Time."  This provision, in relevant part,

states that "Employees shall be paid for all time spent *in the service of the Employer*."  (JA at 21

(emphasis added).)  Other CBA sections cited by the Union in its grievance concern scheduling,

overtime pay, union cooperation, and other matters.

Article 5 of the CBA provides for a multi-step grievance process resulting in binding

arbitration.  The CBA defines the scope of the arbitrator's powers in Article 5.4:

> The arbitrator shall have the authority and jurisdiction to determine
> the propriety of the interpretation and/or application of the Agreement
> respecting the grievance in question, but he shall not have the power
> to alter or modify the terms of the Agreement. . . .
>
> He shall have the authority and jurisdiction in cases concerning
> discharge, discipline, or other matters, if he shall so determine to
> order the payment of back wages and compensation for an employee
> which the employee would otherwise have received *and/or enter such
> other and/or further award as may be appropriate and just*. . . .

(JA at 16 (emphasis added).)

Arbitrator Alan Walt held hearings on the Union's grievance over the course of five days

in 2005.  Kroger and the Union presented numerous witnesses and proffered exhaustive evidence

---

[1]The parties refer to two CBAs regarding meat employees: the 2001-2004 CBA, and the 2004-2007 CBA.  Kroger attached a copy of the 2004-2007 CBA to its Complaint in this matter. (JA at 9-48.)  The District Court relied on the 2004-2007 CBA, and cited the CBA as attached to Kroger's Complaint, without comment.  (*E.g.*, JA at 1842.)  However, the 2001-2004 CBA was in effect at the time the Union filed its grievance (Kroger Br. at 7 n.1), and the arbitration Award at issue addressed the 2001-2004 CBA, (JA at 61).  In any event, both CBAs contain identical language relevant to this case.  This Court will cite the 2004-2007 CBA as attached to Kroger's Complaint and relied upon by the District Court.

regarding issues including: the parties' intentions during the negotiations over Article 10.10, Kroger's previous meat uniforms policy, the scope of the new policy, the definition of "drip dry," proper safe laundering practices for blood-stained coats, and the fabric content of the new burgundy coats. On March 6, 2006, after post-hearing briefing, the arbitrator issued his Opinion and Award. The arbitrator stated that "[t]wo discreet [sic] issues were submitted to arbitration":

> 1. IS THE GRIEVANCE PROCEDURALLY ARBITRABLE AS TO FORM AND TIMELINESS?
> 2. IF SO, DID THE COMPANY VIOLATE ARTICLE 10.10 OF THE COLLECTIVE BARGAINING AGREEMENT ON AND AFTER JULY 17, 2003 BY REQUIRING MEAT DIVISION EMPLOYEES TO LAUNDER AND MAINTAIN UNIFORMS PROVIDED BY THE COMPANY?

(JA 61.) The arbitrator found in favor of the Union on the first issue, and Kroger has not challenged that ruling in this case.

With regard to the second issue, Kroger relies significantly on the arbitrator's framing of the substantive dispute as involving only whether Kroger violated Article 10.10. However, as the Union observes, "[t]he Arbitrator's statement on page 1 of the Award of the 'two discreet [sic] issues' was not a jointly-stipulated statement of the issues." (Union Br. at 16 n.4 (emphasis in original).)

The arbitrator issued the following Award:

> The grievance is procedurally arbitrable. However, the evidence will not support a finding that Article 10.10 has been or is being violated by the Company in supplying drip dry uniforms to Meat Department [employees] which they are responsible to launder and maintain.

> However, members of the bargaining unit are to be compensated for the time and expense incurred in the service of the Employer in laundering and maintaining the uniforms.

4

The grievance hereby is remanded to the parties for the purposes of calculating the compensation due Meat Department [employees] for laundering and maintaining the Company-provided meat coats. That compensation shall be retroactive to the date the burgundy coat program was implemented in each Michigan store.

The company also shall prepare and distribute directly to bargaining unit members a written policy statement containing the information set forth in the final paragraph of the preceding Opinion.

Jurisdiction will be retained in the undersigned in the event of any dispute, or if clarification is required, in implementing the remedial aspects of this Award.

(JA at 25.) The arbitrator's Opinion, which discussed the substantive issues regarding the grievance over nearly 12 pages (JA 13-24), illuminates the bases for the Award. In the key passage explaining why Kroger must compensate Union employees for the time and expense of laundering and maintaining the uniforms, the Arbitrator stated:

Although the Company did not violate Article 10.10 by requiring bargaining unit members to maintain and launder the burgundy meat coats, the grievance also extends to the Union claim that members of the bargaining unit are entitled to be compensated for the time and expense incurred in laundering them, citing Articles 10.3, 10.4, 13, 14, and 15. There is merit to this claim. Article 10.3 states that the [employees] "shall be paid for all time spent in the service of the Employer" [Emphasis Added]. The contractual mandate that Meat Department [employees] maintain and launder the burgundy coats requires that they do so "in the service of the Employer." That obligation is not a personal one: it involves an activity that is integral to the job and as such, must be treated as time worked.

(JA at 23.)

Kroger subsequently filed the instant suit against the Union in the Eastern District of Michigan pursuant to the Labor Management Relations Act ("LMRA") and the Arbitration Act. Kroger sought to partially vacate the arbitrator's Opinion and Award. It sought enforcement of

5

that portion of the Award that found no violation of Article 10.10, and requested in its Complaint that the District Court vacate all portions of the Award "obligating Kroger to take other actions related to the uniforms." (JA at 7.) The Union filed a counterclaim seeking to enforce the entire Award. Kroger moved for summary judgment to partially vacate the Award, and the Union filed a counter-motion to enforce the Opinion and Award. The District Court granted the Union's counter-motion and denied Kroger's motion. Kroger timely appealed.

The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this case arises under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Arbitration Act, 9 U.S.C. § 10. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We generally review a district court's denial of a motion for summary judgment in an arbitrated labor dispute de novo. *Int'l Union v. Dana Corp.*, 278 F.3d 548, 554 (6th Cir. 2002). However, the scope of this Court's review of the underlying arbitration award is extremely limited. *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 216 (6th Cir. 2008). "As long as the arbitrator's award draws its essence from the collective bargaining agreement, and is not merely his own brand of industrial justice, the award is legitimate." *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36 (1987) (internal quotations omitted). As the Supreme Court has held, "if an arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, the fact that a court is convinced he committed serious error does not suffice to overturn his decision." *Major League Baseball*

6

*Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001). This Court has held that in light of the federal policy in favor of arbitration, "a court's review of an arbitrator's decision is very narrow; 'one of the narrowest standards of judicial review in all of American Jurisprudence.'" *Int'l Ass'n of Machinists & Aerospace Workers v. Tenn. Valley Auth.*, 155 F.3d 767, 771 (6th Cir. 1998) (quoting *Lattimer-Stevens v. United Steelworkers*, 913 F.2d 1166, 1169 (6th Cir. 1990)).

Prior to January 2007, this Court applied the four-factor test outlined in *Cement Divisions, National Gypsym Co. v. United Steelworkers of America, AFL-CIO-CLC, Local 135* to determine the enforceability of an arbitration award. 793 F.2d 759, 766 (6th Cir. 1986).[2] In *Michigan Family Resources, Inc. v. Service Employees International Union Local 517M*, this Court, sitting en banc, overruled the four-part inquiry of *Cement Divisions*. 475 F.3d 746 (6th Cir. 2007) (en banc). We concluded that since *Cement Divisions*, the Supreme Court in *Misco* and *Garvey* "refined the standard of review in this area," and that these more recent cases "suggest that *Cement Divisions* gives federal courts *more latitude* to review the merits of an arbitration award than the Supreme Court permits." *Id.* at 751 (emphasis added). Thus, we defined the scope of review as follows:

> we will consider the questions of "procedural aberration" that *Misco* and *Garvey* identify. Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

---

[2]We reiterated this test in the case relied upon by the District Court, *Beacon Journal Publishing Co. v. Akron Newspaper Guild*, 114 F.3d 596, 600 (6th Cir. 1997).

*Id.* at 753 (citations omitted)*. The *Michigan Family Resources* standard for "arguably construing" allows "only the most egregious awards to be vacated." *Id.* This deferential standard "respects the parties' decision to hire their own judge to resolve their disputes, . . . respects the finality clause in most arbitration agreements," and sets forth a policy "whose imperfections can be remedied by selecting better arbitrators." *Id.* at 753-54.

Even though this Court decided *Michigan Family Resources* after the District Court issued its opinion in the instant matter, this Court must determine whether the arbitration Award at issue satisfies the *Michigan Family Resources* test. *See, e.g.*, *Truck Drivers*, 512 F.3d at 216.

**III.**

On appeal, Kroger seeks to preserve only that portion of the Award that held that Kroger did not violate Article 10.10. It continues its attack on the "remedial" aspects of the arbitrator's Award, arguing that those orders violated the arbitrator's authority under the CBA. These challenged remedies include: 1) requiring Kroger to pay employees for their time and expenses spent laundering and maintaining uniforms, including incidental expenses such as detergent and laundromat costs; 2) remanding the grievance to the parties "for the purposes of calculating the compensation due" to the employees; 3) requiring Kroger to prepare and distribute a written policy statement regarding the uniforms and laundering procedures; and 4) retaining of jurisdiction by the arbitrator over the grievance and implementation of the ordered remedies.

At the outset, Kroger contends that had the District Court reviewed the Opinion and Award under the *Michigan Family Resources* standard, "it would likely have rendered a result in Kroger's favor." (Kroger Br. at 29.) However, this Court discarded *Cement Divisions* in favor of

the approach outlined in *Michigan Family Resources* because the *Cement Divisions* standard gave courts "*more latitude* to review the merits of an arbitration award than the Supreme Court permits." *Mich. Family Res.*, 475 F.3d at 751 (emphasis added). Kroger cannot easily argue that under the *more deferential* standard of *Michigan Family Resources*, the District Court would have vacated the Award, where it upheld the Award under the older, less deferential approach. As the Union comments, "[i]f anything, the new 3-pronged formulation [of *Michigan Family Resources*] actually further constrains 'judicial intervention' in the arbitration process." (Union Br. at 33.)

Against this backdrop, Kroger raises two primary arguments that the Award's remedies violate *Michigan Family Resources*: 1) the arbitrator acted outside his authority by resolving issues not submitted to arbitration by the parties; and 2) the arbitrator cannot be said to have arguably construed or applied the CBA, and that his Award was so untethered from the CBA that its remedial provisions constituted the arbitrator's own sense of industrial justice. Kroger does not contend that the arbitrator violated the second prong of *Michigan Family Resources* by having some conflict of interest or by committing some dishonest act in issuing the Award.

### A. The Arbitrator Did Not Act Outside His Authority

In attacking the Award based on the first *Michigan Family Resources* prong, Kroger sensibly contends that "[a] decision rendered on an issue not submitted to arbitration serves as a basis for vacating an arbitration award." (Kroger Br. at 29.) However, Kroger profoundly misreads the record and the arbitrator's Opinion in arguing that the issues resolved by the arbitrator were not committed to him by the parties and that his orders were unsupported by any

9

CBA provision. Kroger relies heavily on the arbitrator's statement of issues at the beginning of his Award, in which the arbitrator stated that the substantive issue before him was: "did the company violate Article 10.10. . . ?" (JA at 61.) However, as the Union stresses, the parties did not agree to the arbitrator's statement of issues, and the arbitrator's Opinion makes clear that more than just Article 10.10 was before him. In his Opinion, Arbitrator Walt cited or quoted various CBA provisions, including Articles 2.1, 4.1, 5.3, 5.4, 9.1, 10.3, 13.1, 19.2, and 19.5. (JA at 62-65.) The Union's grievance itself stated that the new uniforms policy violated "9.1, 10.3, 10.4, 10.10, Articles 13, 14, 19 and 21, and any other relevant sections of its Agreement(s) with UFCW Local 876 covering Meat Departments." (JA at 682.) The various issues concerning compensation and the details of the new uniform policy were all raised in the Union's grievance letter, and were properly before the arbitrator.

Thus, we reject Kroger's contention that CBA provisions beyond Article 10.10 were somehow not submitted to the arbitrator. *Michigan Family Resources* "severely curtailed the 'scope of authority' concept" in reviewing arbitration awards: the arbitrator exceeds his authority not when he makes a mere interpretative error but *only* "'when the collective bargaining agreement does not commit the dispute to arbitration.'" *Truck Drivers*, 512 F.3d at 217 (quoting *Mich. Family Res.*, 475 F.3d at 756). Kroger does not argue that the CBA fails to commit the Union's grievance to arbitration, but only that the grievance before the arbitrator somehow did not encompass the issues he resolved. The Union's grievance clearly raised issues regarding several CBA provisions in addition to Article 10.10, such as Article 10.3. As in *Truck Drivers*, Kroger's challenge on this point "is better characterized as a challenge to the arbitrator's interpretation." *Id.*

10

Furthermore, Kroger's argument that the Award must be vacated because the arbitrator found no violation of the CBA also fails. As a general matter, where no violation is found, an arbitrator who nonetheless fashions a remedy can be said to be imposing his own brand of "industrial justice." *See Beacon Journal*, 114 F.3d at 600. Kroger argues that "[c]ontrary to the Union's assertions below, there was no statement in the arbitrator's Opinion and Award that Kroger was in breach of any provision of the Contract." (Kroger Br. at 36 n.5.) Here, Arbitrator Walt stated that Kroger did *not* violate Article 10.10, and never specifically stated the magic words that are apparently required to satisfy Kroger: "Kroger violated Article ___ of the CBA." However, the arbitrator undoubtedly concluded that Kroger's new policy violated Article 10.3. He referred to the Union's claim that employees are entitled to be compensated for their time and expense in laundering the uniforms, stated that "[t]here is merit to this claim," specifically quoted Article 10.3 and its "in the service of the Employer" language, and concluded that compensation was required here. (JA at 83.) Especially in light of the federal policy favoring arbitration and the deferential standard of review here, we reject Kroger's crabbed reading of the Award, as did the District Court.

**B. The Arbitrator Arguably Construed and Applied the CBA**

In Kroger's main challenge to the Award, it argues that the arbitrator's interpretation was "so untethered" to the terms of the CBA that he could not possibly have been applying the CBA, and that he ignored the CBA's terms. In *Michigan Family Resources*, this Court clearly delineated the limits of judicial inquiry into the arbitrator's interpretation: "in most cases, it will suffice to enforce the award that the arbitrator appeared to be engaged in interpretation, and if

11

there is doubt we will presume that the arbitrator was doing just that." 475 F.3d at 753. Even "serious" interpretative errors by the arbitrator must be tolerated; we may only vacate an award where the arbitrator was so ignorant of the agreement's plain language "as to make implausible any contention that the arbitrator was construing the contract." *Id.*

Here, the arbitrator cannot be said to have been so untethered from the CBA. The arbitrator found that Kroger's new policy did not violate CBA Article 10.10, as that provision allows Kroger to require employees to wear, launder, and maintain the new uniforms. However, based on Article 10.3, the arbitrator decided that Kroger must compensate the employees for their time and expenses in such laundering and maintenance. Kroger obviously rejects the arbitrator's interpretation of the "in the service of the Employer" language of Article 10.3, but the arbitrator's reliance on that provision certainly "appears" to be an interpretation of the CBA, and a rational one at that. Kroger reads Article 10.10 to require employees to be *financially* responsible for maintaining and laundering drip dry uniforms such as the new uniforms at issue. However, the arbitrator plausibly interpreted Article 10.3 to require compensation for employees' time and expenses, and did not find Article 10.10, when read in conjunction with Article 10.3, to assign financial responsibility to the employees. Kroger vehemently disagrees with this reading, and contends that Article 10.3 only applies to time "scheduled" by Kroger, i.e., time for which employees "punched the 'time clock.'" (Kroger Br. at 44.) No matter Kroger's differing interpretation, the arbitrator's reading "appears" to be an interpretation of the CBA, and even if the reading is "'serious,' 'improvident' or 'silly,'" we cannot disturb it. *Mich. Family Res.*, 475

12

F.3d at 753.[3]

The remainder of the arbitrator's Award also resulted from his arguable interpretation of the CBA. The parties dispute, at the level of semantics, whether the arbitrator ordered the parties to "confer" and "calculate" the amount of compensation due to the employees or to "negotiate" such amount. Kroger argues that the arbitrator's order to "confer" constitutes an order to "renegotiate" the CBA, which the arbitrator lacked authority to do. In *AP Parts Co. v. Int'l Union, United Automobile, Aerospace and Agricultural Implement Workers of America*, this Court stated that

> It is not within the arbitrator's authority to direct the parties to negotiate an issue they have already negotiated because the contract does not comport with the arbitrator's sense of equity. The arbitrator's offer to help the parties negotiate a new term for their agreement if they could not come to a resolution on their own is not a satisfactory substitute for deciding issues and resolving disputes or dismissing the grievance if there is no contract violation.

923 F.2d 488, 491 (6th Cir. 1991). Kroger relies on this reasoning to argue that Arbitrator Walt's remand to the parties is impermissible and untethered to the CBA. But *AP Parts* is inapposite. Despite Kroger's argument to the contrary, the arbitrator found a violation of the CBA, and he did not require any renegotiation of a CBA term. As the District Court observed, the arbitrator "merely recognized that the parties were in a better position to determine the laundering and maintenance expenses." (JA at 1847.) The arbitrator did not state this particular rationale for the

---

[3]Kroger relies on a district court opinion in which the court found that the arbitrator ignored the plain meaning of a CBA. *Liberty Nursing Ctr. of Willard, Inc. v. United Food & Commercial Workers' Union Local 911*, 525 F. Supp. 2d 933, 937 (N.D. Ohio 2007). However, the relevant language of the CBA here is certainly more ambiguous and subject to differing reasonable interpretations than the "cut-and-dry numerical language" at issue in *Liberty Nursing*. *Id.* (vacating arbitrator's award where arbitrator "determined that '$14.00' could mean something other than fourteen single primary units of United States currency").

"remand" of the grievance in his Opinion. However, in arguably interpreting the CBA, the arbitrator clearly defined the scope of compensation due, and did not leave the particular items for which compensation was due to further negotiation by the parties.[4] Rather, he instructed the parties, guided by his interpretation, to confer and calculate the compensation due. The arbitrator relied not on his sense of equity, but on the terms of the CBA. Although it might have been preferable for the arbitrator to determine the amount of compensation himself, after hearing evidence from both sides, adopting this alternative approach fell within his authority to issue such an award as may be "appropriate and just." (JA at 16.)

With regard to the arbitrator's order that Kroger "prepare and distribute . . . a written policy statement" on the new uniforms, Kroger contends that the arbitrator required Kroger to adopt a specific policy. Such a requirement, according to Kroger, runs afoul of Article 4.1 of the CBA, which provides that "the right to establish and maintain rules and regulations covering the employees in the stores . . . [is] vested in the Employer." (JA at 14.) Kroger, however, ignores the crucial caveat in this section stating that this right is "subject to the provisions of this contract." (*Id.*) As the District Court reasoned, the arbitrator did not establish or maintain any rules in addition to those that, in his interpretation, were dictated by the CBA. Rather, he

---

[4]Kroger points to a recent district court decision in which the court held that an arbitrator's order to "again negotiate" violated *Michigan Family Resources*. *Great Lakes Energy Coop. v. Local 876 Int'l Brotherhood of Elec. Workers*, No. 07-347, 2008 WL 299022, at *9 (W.D. Mich. Feb. 1, 2008). In *Great Lakes*, the arbitrator found that the CBA did not reach the payment question before the arbitrator, but "remanded" the dispute to the parties "to reach a full meeting of the minds regarding the situation." *Id.* at *2. Here, the arbitrator did not order the parties to renegotiate the CBA to address an issue the CBA did not reach, but merely asked the parties to confer regarding calculation of compensation due under an established CBA provision. Furthermore, the parties in *Great West* conceded that the arbitrator overreached in his order to "again negotiate." *Id.* at *10. Such a concession is absent here.

required that Kroger issue its already-adopted policy in writing so that the meat employees could fully understand it and fulfill their responsibilities. Thus, the order for a written policy statement also arguably falls under Article 5.4's "appropriate and just" clause. In light of the evidence presented to him regarding employee confusion over washing instructions and other matters regarding the new policy, the arbitrator's requirement that Kroger define its policy clearly and in writing did not exceed his authority. He did not specify, for example, how many uniforms would be available or what washing settings must be used, as these matters are committed to Kroger's managerial discretion under the CBA. Rather, he interpreted the CBA to require compensation for the employees' time and expense in maintaining the uniforms, and reasonably required that Kroger inform its employees of their specific duties in accordance with the CBA.

Finally, the arbitrator's retention of jurisdiction to clarify his Award or to resolve further disputes, such as over the amount of compensation, also stemmed from an arguable interpretation of the CBA. The arbitrator's authority under the CBA to issue an Award "as may be appropriate and just" (JA at 16) encompasses the arbitrator's retention of jurisdiction here. The arbitrator possessed the authority to "order the payment of back wages and compensation." (*Id.*) Thus, retaining involvement in the case to resolve further disputes over this issue and other related issues is reasonable, and is not so unmoored from the CBA that the arbitrator must have been ignoring the CBA. In the face of any doubt that the arbitrator was construing the CBA, this Court must presume that the arbitrator was indeed interpreting the CBA. *Mich. Family Res.*, 475 F.3d at 753.

Kroger's remaining arguments lack merit. The arbitrator's entire Opinion and Award resulted from arguable construction and application of the CBA. This is simply not one of those

15

"rare and egregious cases [where] the courts must find that arbitral merits decisions depart so far from the contract language as not to amount to contract construction." *Mich. Family Res.*, 475 F.3d at 760 (Gibbons, J., concurring in part and dissenting in part).

## IV.

For the foregoing reasons, we **AFFIRM** the District Court's grant of the Union's motion to enforce the Opinion and Award and denial of Kroger's motion for summary judgment to partially vacate the Award.